IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

No Burn North America, Inc.,                        Case No. 3:04CV7674

        Plaintiff

    v.                                                                 ORDER

Sam's West, Inc.,

        Defendant

       This is a suit by a seller, No Burn North America, Inc. [No Burn] of a flame retardant for use on Christmas trees against the purchaser, Sam's West, Inc. [Sam's] for the alleged failure of Sam's to return unsold units to No Burn in a condition that would have enabled No Burn to try to sell the units to other purchasers. According to No Burn, approximately 234,806 bottles of its product came back from Sam's in early 2004 in an unsaleable condition. No Burn alleges that the value of the damaged units was $1.4 million; this suit seeks to recover that amount.

       No Burn filed its complaint on October 25, 2004. Sometime thereafter, but before the case management conference, representatives from Sam's visited warehouses in South Bend, Indiana, and Perrysburg, Ohio, where No Burn was storing the returned product.

       At the case management conference on April 18, 2005, before the Hon. David A. Katz, to whom this case initially was assigned, counsel for No Burn told Judge Katz [and, presumably, Sam's

Case: 3:04-cv-07674-JGC  Doc #: 81  Filed:  12/08/06  2 of 6.  PageID #: 1300

counsel] that his client desired to dispose of the stored product due to the continuing storage costs.[1]
Judge Katz told the parties to reach an agreement as to further inspection of the stored product.

On May 12, 2005, No Burn's counsel informed Sam's counsel that if arrangements were not made for further inspection, the product would be destroyed. In a letter sent the following day, Sam's counsel objected to any destruction absent an agreement between the parties or an order from the court.

Sam's conducted an additional inspection at the South Bend warehouse on June 28, 2005. In attendance were experts retained by Sam's. Sam's and its expert also conducted on August 23, 2005, an inspection of the product stored in Perrysburg. Video-recording and photographing occurred during these inspections.

In September, 2005, acting, in part, in response to complaints from the owner of the South Bend facility about the space being taken up by the returned product and the effects of leakage, No Burn's president ordered the stored product to be removed and destroyed.[2]

Sam's only learned about this action ten months later, when it deposed No Burn's president in July, 2006.

---

[1] No Burn was spending $4,000/month in storage fees at the South Bend facility, where, apparently, the great majority of the returned product was being kept.

[2] No Burn's counsel represents that Judge Katz had indicated at the original case management conference that destruction would be reasonable after one additional inspection of the product by Sam's. Sam's counsel asserts that Judge Katz did not make that statement. For purposes of this opinion, I am assuming that, if the statement was made, it was either not heard or not understood by Sam's counsel as it was by No Burn's counsel [i.e., as an indication of informal judicial assent to destruction after an additional inspection by Sam's].

Pending is a motion by Sam's for sanctions for No Burn's destruction of the product that had been stored at the South Bend facility.[3] Sam's claims that the destruction of the product constituted sanctionable, if not, indeed, actionable, spoliation. It claims that its ability to defend against No Burn's suit has been severely compromised, as Sam's has no means of determining first-hand whether some or all of the returned product was, in fact, unsaleable.

For the reasons that follow, I conclude that the motion for sanctions should be denied.

## Discussion

In the Sixth Circuit, the test for determining whether to impose sanctions for spoliation of evidence is whether:

> evidence has been intentionally altered or destroyed by a party or its expert *before the defense had an opportunity to examine the evidence*. If a threshold showing of spoliation is made, the burden then shifts to the proponent of the evidence to prove that the other side was not prejudiced by the alteration or destruction of the evidence. The test for prejudice is whether there is a reasonable possibility, based on concrete evidence, that access to the evidence which was destroyed or altered, and which was not otherwise obtainable, would produce evidence favorable to the objecting party.

*Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999) (citation omitted) (emphasis supplied).

I conclude that sanctionable spoliation did not occur in this case because No Burn's destruction of the returned product did not occur before Sam's had an opportunity to examine the evidence. Representatives of Sam's had been allowed to enter each warehouse on more than one occasion. When they did so, they took photos and made video-recordings of what they saw.

---

[3] About 15,000 units of returned product remain stored, and thus available for inspection, at the Perrysburg facility.

To be sure, during these inspections, Sam's did not obtain samples of the returned product, much less photograph [as it now claims – implausibly – it might have wanted to do] all 234,806 returned units. This does not mean, however, that during the eleven months between the filing of this suit and destruction of the product, Sam's could not have done so.

Since mid-May, 2005, Sam's knew that No Burn wanted to destroy the returned samples. Sam's knew, or certainly could have reasonably anticipated, that No Burn was incurring considerable storage expenses – without any likely benefit to No Burn. Sam's knew that Judge Katz expected the parties to be reasonable and to reach an agreement concerning further inspection, and thereby to accommodate No Burn's desire to eliminate the costs of storage. No Burn repeated its desire to destroy the returned product during a July 28, 2005, telephone conference between counsel and Judge Katz.

Despite the repeated warnings from No Burn that the returned product would be destroyed if Sam's did not make arrangements for further inspection, Sam's did nothing to protect against that risk. It remained utterly indifferent to the risk of destruction until it learned during the July, 2006, deposition of No Burn's president that destruction had occurred ten months earlier – in September, 2005.

I decline to reward Sam's for its indifference and indolence. To be sure, after No Burn told Sam's on May 12, 2005, that No Burn was going to destroy the product, Sam's counsel sent a letter on the next day asserting that No Burn could not do so absent Sam's consent or the court's approval. But Sam's did not make that objection to the court. And, more pertinently, Sam's did not seek a protective order or other judicial remedy.

Even more importantly, it appears that Sam's did not attempt to make arrangements for further inspections after its July and August, 2005, visits to the storage facilities. No Burn could reasonably infer that, in light of a lack of further inquiry from Sam's, Sam's was content with the inspections that had already taken place. It was not up to No Burn to try to discern by telepathy or otherwise what, if anything, more Sam's wanted.

The fault lies with Sam's, which failed to act with diligence to ensure that destruction, as had been threatened by No Burn in May and July, 2005, did not occur – or, at the very least, that it occurred only under court sanction and supervision. It was not up to No Burn to continue to wait and wonder about Sam's desire or need for further inspection – and, in the meantime, to keep paying an increasingly unhappy warehouseman for his services.

Sam's complains that No Burn concealed its destruction of the product from September, 2005, until July, 2006. It doth protest too much: it's not that No Burn concealed its conduct – it's that Sam's never bothered to ask for a further opportunity to inspect the product. Only when Sam's found out about the destruction did it raise a fuss. Had Sam's not slept on its rights, it would not have lost the opportunity to do whatever it wanted with the returned product. Sam's alone is responsible for any impairment in its ability to defend against No Burn's claim.

In any event, even if No Burn could be found to have spoliated the returned product, Sam's has not shown that it has suffered sufficient prejudice to justify the imposition of sanctions. Sam's has photos and video-recordings; its experts saw the condition of the product before it was destroyed. And 15,000 bottles remain available for Sam's to look at.[4]

---

[4]

Sam's contends that the portion still being stored at the Perrysburg facility consists of saleable product, and that the unsaleable product whose condition gives rise to this suit was in the South Bend warehouse and has since been destroyed. Sam's, however, still has photos and video-

**Conclusion**

To find spoliation in this case would require condoning the failure of a party to look after its own interests. No Burn was under no obligation to keep storing items at its expense that Sam's had already seen unless Sam's asked for something more in a timely and diligent manner. Likewise, Sam's had no right to expect that No Burn would continue to bear the expense of such storage indefinitely. Sam's could have, if it had wanted to, prevented the circumstances it now faces. As Sam's alone was responsible, it alone must bear the consequences of its inattention, indifference, and inaction.

It is, therefore,

ORDERED THAT the motion of the defendant for sanctions for spoliation be, and the same hereby is denied.

So ordered.

    s/James G. Carr
James G. Carr
Chief Judge

---

recordings that the jury can compare to the extant exemplars.

These photos and videos, along with the testimony of those who saw the product after its return provide an evidentiary basis for Sam's contention that most of the returned product was saleable. The destroyed bottles may well have been the best evidence of their condition, but they were not the only evidence. The prejudice from their absence is relative, not absolute. Thus, even if spoliation occurred, No Burn's conduct – if it has any relevance at trial [an issue not presently being decided] – is, at most, something for the jury to consider as it assesses No Burn's other proof of its loss.