IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

No Burn North America, Inc.,                             Case No. 3:04CV7674

                    Plaintiff

          v.                                                       ORDER

Sam's West, Inc.,

                    Defendant

This is a suit by a manufacturer, No Burn North America, Inc. [No Burn], of a flame retardant for use on Christmas trees against Sam's West, Inc. [Sam's], which offered the flame retardant for sale in its stores during the 2003 holiday season. After a dispute over the parties' contractual obligations, the parties entered into a settlement agreement that, inter alia, required Sam's to return to No Burn all unsold units of the product. No Burn alleges Sam's breached the settlement agreement by failing to compensate No Burn for units returned in a damaged, "unsaleable" condition, which prevented No Burn from selling the units to other purchasers. No Burn seeks to recover from Sam's $1.4 million, the value of the damaged units as calculated under the settlement agreement.

Pending is No Burn's motion for summary judgment. For the reasons that follow, No Burn's motion shall be granted in part and denied in part.

**Background**

In 2003, No Burn and Sam's entered into a consignment agreement under which Sam's offered No Burn's flame retardant for sale in Sam's stores during the 2003 Christmas season. After a dispute between the parties regarding the consignment arrangement, the parties entered into a settlement agreement resolving all of No Burn's claims against Sam's.

The settlement agreement obligated Sam's to return all unsold units to No Burn. Additionally, the parties agreed that, beyond an initial "permissible level" of damage, or "shrinkage," to the product [6,670 units], Sam's would be responsible for damage to any additional units. The shrinkage "schedule" provided that Sam's would pay: 1) $8.00 per unit for shrinkage beyond the "permissible level" [i.e., for damage between 6,670 units and 8,400 units]; 2) $10.00 per unit for shrinkage between 8,401 units and 13,400 units; and 3) $12.00 per unit for shrinkage beyond 13,401 units.

The settlement agreement required No Burn to make any claims for shrinkage within thirty days of No Burn's receipt of the final shipment of the product. Within ten days of a claim, Sam's had to: 1) pay any undisputed claim; or 2) submit a written objection to the claim.

In August, 2004, Sam's completed its return of unsold units to No Burn. Sam's returned the units to No Burn in the same packaging originally used by No Burn to ship the product to Sam's. In a letter to Sam's dated August 24, 2004, No Burn made a claim in accordance with the settlement agreement for approximately $1.4 million, representing alleged damage to roughly 120,000 units of No Burn's fire retardant.

In the course of calculating its damages, No Burn employed: 1) KAK Warehouse Distribution ["KAK"] to receive, stock, and, where possible, recondition damaged bottles; and 2)

2

an independent adjuster, GAB Robins, to review KAK's procedures, inspect the damaged units, and perform a damage appraisal. KAK set aside as nonsaleable units with damage to the label, damage to the bottle, or spillage on the bottle's exterior.

Sam's refused to make payment on No Burn's claim under the settlement agreement, giving rise to this action.

**Discussion**

**1. Rescission: Mutual Mistake**

Sam's seeks rescission of the settlement agreement, arguing that at the time the agreement was executed, both parties mistakenly believed that the product's packaging was adequate. The packaging, designed by No Burn, was used by No Burn to ship the product to Sam's at the beginning of the parties' consignment relationship. Sam's used the same packaging to return the product to No Burn following the execution of the settlement agreement. Sam's claims that, prior to and during the signing of the settlement agreement, both parties assumed that No Burn's packaging was suitable and that the packaged product could be returned by Sam's without shrinkage due to faulty packaging.

A contract based on mutual mistake, a mistake that is common to both parties, may be rescinded where the mistake is of an existing or past material fact that is the basis of the contract. *Mitchell v. First Nat'l Bank in Stuttgart*, 739 S.W.2d 682, 683 (Ark. 1987).[1]

There are several problems with Sam's argument. First, the mistake appears to be Sam's only, and not a mistake shared by both parties. A mutual mistake requires that each party have "labor[ed] under the same misconception." *Mikus v. Mikus*, 981 S.W.2d 535, 539 (Ark. App.

---

[1] Arkansas law controls pursuant to a choice of law clause in the settlement agreement.

1998). Absent fraud by the nonmistaken party, a unilateral mistake cannot justify a contract's rescission. *Foshee v. Murphy*, 593 S.W.2d 486, 488 (Ark. App. 1980) (citation omitted). There is no indication that No Burn, who designed the product's packaging, was unfamiliar with the packaging's strength and/or condition.

Second, Sam's mistake relating to the strength of the product's packaging does not affect the basis of the contract. A mutual mistake requiring rescission "must do violence to the understanding of both parties." *Weiss v. Turney*, 173 F.2d 617, 619 (8th Cir. 1949). The purpose of the settlement agreement, according to a Sam's executive, "was to release any and all claims that No Burn allegedly claimed to have against Sam's Club" resulting from the parties' consignment relationship. (P. Todd Harbaugh Aff. ¶ 7.) It cannot be said that Sam's mistake has "resulted in a total failure" of the contract; the mistake was neither the parties' "inducement" nor the "basis of their negotiations." *Jewell v. McElhaney*, 1994 WL 202445, at *2 - 3 (Ark. App.) (citation omitted).

Sam's knowledge that No Burn's packaging was inferior may have affected the parties' allocation of settlement costs and risks. Sam's may have deducted from its settlement offer the cost of repackaging the bottles of flame retardant, or the parties may have increased the "permissible level" of shrinkage to the product. Sam's error, however, does not frustrate the intention of the parties to settle claims by No Burn against Sam's from the consignment relationship.

Third, Sam's assumed the risk that the packaging was inadequate. By allocating the risk of excessive damage to the units to Sam's via the contract's shrinkage provision, the parties anticipated that Sam's might return the unsold units to No Burn in a damaged condition.

4

The Restatement (Second) of Contracts § 152(1) (1979) provides that a mutual mistake renders a contract voidable by the adversely affected party unless that party bears the risk of the mistake. A party bears the risk of mistake when the risk is allocated to him or her by agreement of the parties. *Id.* § 154. Applying Arkansas law, the Eighth Circuit noted that, while no Arkansas court has expressly adopted § 154, several cases have adopted its reasoning. *See Hall Contracting Corp. v. Entergy Servs., Inc.*, 309 F.3d 468, 475 (8th Cir. 2002).

Sam's notes that the settlement agreement did not require Sam's to inspect the product or its packaging. This is true. The risk of damage [shrinkage], however, which was contemplated in the agreement, necessarily encompasses loss from inferior packaging. The contract was drafted to handle such a contingency. Because the parties allocated the risk of shrinkage to Sam's, Sam's cannot seek rescission on the basis of mutual mistake.

## 2. Rescission: Unilateral Mistake

Alternatively, Sam's seeks rescission of the settlement agreement as a result of unilateral mistake due to No Burn's alleged fraud, misrepresentation, or other inequitable conduct.

Sam's may obtain rescission for unilateral mistake where: 1) the mistake is so significant that to enforce the contract as it was made would be unconscionable; 2) the mistake relates to a material feature of the contract; 3) the mistake occurred notwithstanding the mistaken party's exercise of reasonable care; and 4) rescission will not cause serious prejudice to the nonmistaken party [except for the loss of his or her bargain]. *See Mountain Home Sch. Dist. No. 9 v. T.M.J. Builders, Inc.*, 858 S.W.2d 74, 78 (Ark. 1993) (citing *State ex rel. Ark. State Highway Comm'n v. Ottinger*, 334 S.W.2d 694, 696 (Ark. 1960)).

5

Rescission is not warranted where the nonmistaken party: 1) was not guilty of any fraud, concealment, undue influence, or bad faith; 2) did not induce the mistake; and 3) will not derive any unconscionable advantage from the enforcement of the contract. *Bishop v. Bishop*, 961 S.W.2d 770, 775 (Ark. App. 1998) (citing *Lowell Perkins Agency, Inc. v. Jacobs*, 469 S.W.2d 89, 91 (Ark. 1971)).

To enforce the settlement agreement as written by No Burn and Sam's would not be unconscionable. Sam's suggests that No Burn took advantage of Sam's mistake to such an extent that enforcement of the contract would be unfair to Sam's. Arkansas courts review the totality of the circumstances surrounding the negotiation and execution of a contract to determine whether enforcement of a contractual provision would be unconscionable. *Jordan v. Diamond Equip. & Supply Co*., 2005 WL 984513, at *9 (Ark.) (citation omitted). Specifically, courts attempt to determine: 1) if a gross inequality of bargaining power existed between the parties; and 2) whether the aggrieved party was made aware of and comprehended the particular provision. *Id.*

Sam's cannot complain that it: 1) suffered from a substantial inequality of bargaining power; or 2) did not comprehend or was unaware of the shrinkage provision, the portion of the contract that, Sam's alleges, reflects its mistake. A sophisticated party, Sam's made a calculated decision to enter into a settlement agreement to resolve all of No Burn's claims against Sam's instead of facing the possibility of litigation.

Sam's can reasonably be held to understand the scope of the shrinkage provision. It could have anticipated that inferior packaging could cause shrinkage, for which it explicitly accepted liability via the shrinkage provision.  Sam's possessed the bottles of flame retardant in their

6

original packaging, and thus could ascertain the apparent durability of the packaging and anticipate: 1) the appropriate amount of "permissible" shrinkage; 2) the means by which the product could be returned to No Burn; and 3) the extent to which it would assume liability for excessive shrinkage.

Sam's argues that it would not have agreed to pay No Burn $400,000 under the settlement agreement "if it knew that the Product's defective design and packaging would render the Product unsaleable after the return shipment to No Burn." (Def.'s Opp'n. to Pl.'s Mot. for Summ. J. 11.) Sam's presumably routinely ships products around the country – using both its own and others' packaging. Sam's agreed to assume liability for excessive shrinkage to the unsold units, and it could have taken any measures it deemed necessary to ensure that the product was returned intact to No Burn. Sam's could have insisted when the settlement agreement was signed that No Burn warrant that the packaging could withstand the return trip. Under these circumstances, Sam's cannot complain of unconscionability.

Moreover, as is discussed above, the alleged mistake does not relate to a material feature of the settlement agreement. The absence of an error affecting the basis of the parties' agreement defeats Sam's claim for rescission both as a result of alleged mutual mistake and alleged unilateral mistake.

Sam's also failed to exercise reasonable care. It had the opportunity to assess the packaging's quality and any failure on its part to do so brought any alleged mistake on itself. Sam's failed to exercise reasonable diligence by ensuring that the product could be returned unharmed to No Burn. This court cannot through rescission deny No Burn the benefit of its

7

bargain where Sam's assumed liability for excessive shrinkage and where Sam's has not shown that it took reasonable steps to ensure that the product was safely packaged.

Finally, Sam's has shown no fraud or inequitable conduct on the part of No Burn. Sam's has made no suggestion that No Burn allowed Sam's to make a mistake about the packaging or otherwise acted in bad faith. Even if No Burn knew or suspected its packaging was inadequate, Sam's – which had the units and packaging in its possession – was chargeable with this knowledge. Sam's has provided no evidence that No Burn: 1) is guilty of any fraud or concealment; 2) induced Sam's alleged mistake; or 3) will derive an unconscionable advantage from the enforcement of the settlement agreement.

Sam's should be held to the obligations it assumed under the settlement agreement. That Sam's entered into an agreement that later appeared improvident is not a ground for relief. *Bishop v. Bishop*, 961 S.W.2d 770, 775 (Ark. App. 1998) (citing *Helms v. Helms*, 875 S.W.2d 849, 851 (Ark. 1994)).

## Conclusion

The parties entered into a valid settlement agreement under which Sam's assumed liability for excessive damage to the unsold units of fire retardant. No reasonable juror could find that Sam's may seek rescission of the agreement on the basis of mutual mistake or unilateral mistake.

The extent to which No Burn has been damaged, however, remains in dispute and needs to be tried to and resolved by a jury.

For the foregoing reasons, it is

ORDERED THAT No Burn's motion for summary judgment be, and the same hereby is granted with regard to Sam's liability under the settlement agreement and denied with regard to the issue of damages.

So ordered.

<u>s/James G. Carr</u>
James G. Carr
Chief Judge